IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HALEY CLARK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:18-CV-2100-D |
| VS. | § | |
| | § | |
| NORDSTROM, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging violations of Texas law in connection with the termination of plaintiff's employment, the court must decide whether the claims are subject to mandatory, binding arbitration. Concluding that they are, the court grants defendant's motion to compel arbitration, stays the case pending the completion of arbitration, and directs the clerk of court to close the case for statistical purposes while the stay is in effect.

I

In November 2013 Trunk Club, a Chicago-based clothing retailer, hired plaintiff Haley Clark ("Clark") to work in its Dallas office. The following year, Trunk Club was acquired by defendant Nordstrom, Inc. ("Nordstrom"), and its employees, including Clark, were required to sign the Trunk Club Dispute Resolution Agreement ("Agreement").

The Agreement provides, in pertinent part:

> [t]his Agreement applies to any disputes arising out of or related to your application for employment with Trunk Club or one of its affiliates, subsidiaries or parent companies, including Nordstrom Inc. (hereinafter "Trunk Club"), or your employment with Trunk Club or the termination of your employment from Trunk Club.

D. Mot. Ex. A-1 at 1.[1]  It further provides that it

> applies without limitation to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, retaliation . . . or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and other state and local statutes, addressing the same or similar subject matters, and all other state statutory and common law claims.  Such disputes also include without limitation disputes arising out of or relating to the interpretation or application of this Agreement. However, this Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

*Id.* at 1-2.

---

[1]The court is citing the record in this manner because Nordstrom did not comply with N.D. Tex. Civ. R. 7.1(i)(1) or 7.1(i)(4) in briefing this motion.  Rule 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix."  Rule 7.1(i)(4) provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner.  The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix (*i.e.,* the numbering system must not re-start with each succeeding document in the appendix).'"

From the time she was hired, until October 23, 2017, Clark worked for Trunk Club without incident. On October 23, 2017, however, two individuals from Nordstrom's loss prevention department met with Clark at Trunk Club's offices and accused her of stealing Nordstrom property and improperly using her employee discount. Although Clark explained that she was unaware that she was doing anything wrong with respect to her employee discount and denied the accusation of theft, Clark was informed that she was being "reassigned" to her house for the remainder of the day to await a decision from Nordstrom regarding her employment status. Clark was later instructed to appear at Nordstrom's offices that afternoon.

During the meeting at Nordstrom's offices, Nordstrom terminated Clark's employment and required that she sign the following five documents: (1) Investigations Civil Notice, (2) Calculation of Loss, (3) Adult Criminal Trespass Warning, (4) Nordstrom Written Statement, and (5) Promissory Note – Employee Caused Loss ("Promissory Note"). Although Nordstrom eventually decided not to pursue the $180.00 reflected on the Calculation of Loss form and admitted that the Adult Criminal Trespass Warning was issued in error,[2] it nonetheless sent Clark three different letters (dated November 21, 2017, December 7, 2017, and January 3, 2017) demanding from Clark the amount reflected in the

---

[2]On January 17, 2018 counsel for Nordstrom informed Clark that "Nordstrom has decided not to pursue incident #1 – Theft Employee Property in the amount of $180.00 reflected on the Calculation of Loss form," Pet. ¶ 29, and that "the trespass notice issued to [Clark] on 10/23/17 was issued in error . . . [Clark] is not trespassed from any Nordstrom location at this time," *id.* ¶ 34.

Promissory Note.

On July 16, 2018 Clark sued Nordstrom in state court alleging claims for violation of the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016 & Supp. 2018); violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus & Com. Code Ann. §§ 17.41-17.63 (West 2011 & Supp. 2018); and false imprisonment. She also seeks attorney's fees and a declaration that the Promissory Note is unenforceable as a matter of law and that the purported debt is canceled. Nordstrom removed the suit to this court and now moves to compel arbitration of Clark's claims pursuant to the Agreement. Clark opposes the motion.

II

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4). When considering a motion to compel arbitration, the court engages in a two-step process. First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and

(2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citations omitted). Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.). Because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

"[W]here the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). It is "simply an additional, antecedent agreement" between the parties. *Id.* at 70. When a delegation clause is present, a different issue must be addressed: "'Who should have the primary power to decide' whether the claim is arbitrable." *Kubala*, 830 F.3d at 202 (italics omitted) (quoting *Kaplan*, 514 U.S. at 942). "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the

arbitrator." *Id.* The presence of a delegation clause obligates the court to "refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr.*, 561 U.S. at 68-69). When a party seeking arbitration directs the court to a "purported delegation clause, the court's analysis is limited." *Id.*

The court first determines "whether the parties entered into *any arbitration agreement at all*." *Id.* at 201 (emphasis in original). The court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)). If the court determines that the parties did enter into such an agreement, then "the only question . . . is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. The party arguing "that an arbitrator has authority to decide arbitrability 'bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question.'" *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (quoting *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014)). But "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a

court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 529 (2019).

III

Because Clark does not dispute that a valid agreement to arbitrate exists between her and Nordstrom,[3] the court begins its analysis by addressing whether it is for the court or the arbitrator to determine whether the dispute in question falls within the scope of the Agreement.

A

Nordstrom contends that the Agreement delegates authority to the arbitrator to decide disputes over its interpretation, providing that covered disputes "include without limitation disputes arising out of or relating to the interpretation or application of this Agreement."[4] D. Br. 7 (quoting D. Mot. Ex. A-1 at 2). Clark does not appear to dispute Nordstrom's interpretation of this delegation clause; instead, she responds that it is "too late" for Nordstrom to insist that an arbitrator decide the threshold question of arbitrability because Nordstrom removed the case to this court "to invoke this Court's jurisdiction and then waited

---

[3]Although Clark contends in her response that she was required to sign the Agreement "in order to keep the same job that she already had held for at least ten months," she does not argue that the Agreement is invalid on this basis. P. Br. 1; *see also id.* at 1 n.1.

[4]Nordstrom also contends that, notwithstanding the delegation provision, all of Clark's claims are subject to arbitration because they arise out of Nordstrom's alleged conduct leading up to the termination of her employment. Because the court concludes that the delegation clause in the Agreement evinces an intent to have the arbitrator decide whether Clark's claims must be arbitrated, the court does not reach the question whether Clark's claims are subject to arbitration.

until now, when it asks this Court to decide for itself whether the dispute is subject to arbitration." P. Br. 7.[5]

B

The court concludes that Nordstrom has "clearly and unmistakably" shown that the parties agreed to delegate "threshold" issues of arbitrability to the arbitrator. *See ConocoPhillips*, 741 F.3d at 630. Because Nordstrom asserts that the Agreement contains a delegation clause, the court's "analysis is initially narrow." *Kubala*, 830 F.3d at 203. If the court determines that the Agreement *does* contain a valid delegation clause, it must refer the claim to arbitration absent some exceptional circumstance. *Id.* Nordstrom argues that the Agreement contains a clause that explicitly delegates "gateway" issues of arbitrability to the arbitrator and that the language in the Agreement is intentionally broad.

"[The] strong presumption in favor of arbitration 'applies with even greater force' when the parties include . . . broad" language in the arbitration agreement. *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *2 (N.D. Tex. June 28, 2007) (Fitzwater, J.). The Agreement states that covered "disputes also include *without limitation* disputes arising out of or relating to the *interpretation or application* of this Agreement. However, this Agreement does not apply to disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement." D. Mot. Ex. A-1 at 2 (emphasis added). This language is similar to the delegation clause in *Kubala*, which provided: "[t]he arbitrator

---

[5]Because Clark's arguments regarding the timing of Nordstrom's motion to compel relate primarily to the question of waiver, the court will address them below. *See infra* § IV.

shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, *applicability*, scope, enforceability, construction, validity and *interpretation* of this Policy and any agreement to arbitrate a Covered Dispute." *Kubala*, 830 F.3d at 204 (emphasis added). In *Kubala* the Fifth Circuit held that this language was sufficiently broad to show that "the parties agreed that the arbitrator and not the court should be the decisionmaker on whether a given claim is arbitrable." *Id.* Similarly, the language of the delegation clause in the Agreement clearly and unmistakably demonstrates that the parties agreed to delegate "gateway" issues of arbitrability to the arbitrator and not to the court.

Because the Agreement contains a valid delegation clause, all disputes regarding the arbitrability of Clark's claims or the scope of the Agreement must be decided by the arbitrator, not the courts. *See Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 379 (5th Cir. 2016) ("Because the arbitration agreement contains a delegation clause, any disputes about the arbitrability of Reyna's claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts." (footnotes omitted)).

IV

Having determined that Nordstrom and Clark entered into a valid arbitration agreement that contains a delegation clause, the court now considers Clark's assertion that Nordstrom waived its right to arbitration.

A

"Despite the strong federal policy favoring arbitration, the right to arbitration may be

waived." *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. Appx. 462, 464 (5th Cir. 2004) (per curiam) (citing *Price v. Drexel Burnham Lambert, Inc*., 791 F.2d 1156, 1158 (5th Cir. 1986)). "A 'waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *Id*. (quoting *Price*, 791 F.2d at 1158). "Normally, waiver occurs when a party initially pursues litigation and then reverses course and attempts to arbitrate, but waiver can also result from 'some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 911 (5th Cir. 2001) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)).

"'There is a strong presumption against' a finding that a party waived its contractual right to arbitrate, and 'any doubts thereabout must be resolved in favor of arbitration.'" *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (quoting *Texaco Expl.*, 243 F.3d at 911); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). "[A] party claiming that another party waived the contractual right to arbitrate bears a heavy burden to establish the claim." *Gulf Guar. Life Ins*., 304 F.3d at 484; *see also Price*, 791 F.2d at 1161 ("It is well established that where a party asserts the right to demand arbitration during pretrial proceedings, the party later opposing a motion to

compel arbitration necessarily bears a heavy burden in showing waiver.").

B

Clark contends that Nordstrom's motion should be denied because Nordstrom waived any arbitration clause by substantially invoking the judicial process to Clark's detriment. She posits that in the 470 days that have passed since Nordstrom first emailed Clark's counsel a copy of the Agreement, "much has happened," including, *inter alia*: Nordstrom's responding to Clark's DTPA demand letter; Nordstrom's filing an answer in state court; Nordstrom's removing the lawsuit to federal court; Nordstrom's filing an amended answer and not raising arbitration as an affirmative defense[6]; the parties' participating in a Rule 26(f) conference; the court's entering a scheduling order; and the parties' engaging in written discovery and conducting a deposition. Regarding prejudice, Clark contends that she has incurred various costs and expenses, including costs related to discovery, costs related to her response to Nordstrom's motion to compel, and $40,331.25 in costs associated with producing and responding to statutorily mandated pre-suit notice under the DTPA.

---

[6]Clark contends that Nordstrom's failure to raise the affirmative defense of "arbitration and award," under Rule 8(c) "is, by itself, fatal." P. Br. 10. Although Clark is correct that, generally, the defense of "arbitration and award" must be pleaded in response to a preceding pleading, "that affirmative defense applies only when disputes have already been arbitrated and the award has been obtained, which is not the situation now before the Court." *Mapes v. Chevron USA Prods. Co.*, 237 F.Supp.2d 739, 745 (S.D. Tex. 2002) (citation omitted); *see also Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105-06 (2d Cir. 2002) (explaining that the affirmative defense of arbitration mentioned in Rule 8(c) does not refer to a motion to stay pending arbitration, but to a situation in which arbitration has already occurred); *Lee v. Grandcor Med. Sys., Inc.*, 702 F. Supp. 252, 254 (D. Colo. 1988) ("Clearly, Rule 8(c) is limited to the situation where a dispute already has been arbitrated and an award has been obtained.").

In reply, Nordstrom maintains that its participation in the judicial process thus far has been minimal since it has not filed any motions seeking disposition on the merits and has not asked the court for any affirmative relief; that the six month lapse between Nordstrom's removal and its notice to Clark that it intended to invoke the Agreement is alone insufficient; that pre-suit activity does not invoke the judicial process and cannot support a finding of waiver; and that Nordstrom has not taken any action in federal court, such as filing dispositive motions, that would allow it to see whether it would win or lose before deciding to compel arbitration. Regarding prejudice, Nordstrom maintains that Clark cannot establish prejudice based on expenses related to pre-suit notice or incurred during discovery and that it will stipulate to allowing the use of all previously conducted discovery in arbitration.

C

The court concludes that Clark has not carried her heavy burden of demonstrating waiver. Nordstrom did not substantially invoke the judicial process by removing the case, answering, or engaging in preliminary discovery. "To invoke the judicial process '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (quoting *Subway*, 169 F.3d at 329). Nordstrom did not initiate any litigation action in this case; it merely defended itself against Clark's claims and engaged in preliminary civil discovery of the type that the Agreement expressly permits. *See* D. Mot. Ex. A-1 at 2 ("In arbitration, you and Trunk Club will have the right to conduct adequate civil discovery and to bring motions, including motions for full

and/or partial summary judgment and other motions that could resolve all or part of the disputes."). Such activity falls well short of what is required to establish waiver. *See, e.g., Gulf Guar. Life Ins*., 304 F.3d at 485 (explaining that "Connecticut General did not initiate any litigation action in this case; it merely defended itself against Gulf Guaranty's court claims" and concluding that "Connecticut General did not waive its right to arbitrate its dispute with Gulf Guaranty"); *Williams v. Cigna Fin. Advisors, Inc*., 56 F.3d 656, 661-62 (5th Cir. 1995) (concluding there was no waiver of right to arbitrate despite removing action to federal court, filing motion to dismiss, filing motion to stay proceedings, answering complaint, asserting counterclaim, and engaging in discovery); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-78 (5th Cir. 1991) (finding no waiver despite serving interrogatories, requesting production of documents, attending pretrial conference, and waiting thirteen months before seeking to compel arbitration); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc*., 427 F.2d 924, 927-29 (5th Cir. 1970) (concluding there was no waiver despite filing answer denying liability, filing counterclaims, attempting to implead parties, and allowing depositions before demanding arbitration).

Even if Nordstrom substantially invoked the judicial process before filing its motion to compel, Clark has failed to show that she suffered prejudice as a result. Clark argues prejudice based on the expenses she incurred in connection with her pre-suit demand letter. It is clearly established in this circuit, however, that "[p]re-suit inactivity does not invoke the judicial process and cannot support a finding of waiver." *Walker*, 938 F.2d at 578 (citing *Gen. Guar. Ins. Co.*, 427 F.2d at 928). Nor can Clark rely on the expenses she has incurred

in connection with civil discovery in this matter to show prejudice. Not only does the Agreement expressly contemplate discovery of the type the parties have engaged in, but Nordstrom has agreed to stipulate to allowing the use of all previously conducted discovery in the arbitration. "[W]hen only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice to the party opposing the motion to stay litigation." *Id.* (citing *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 421 (5th Cir. 1985)). Accordingly, the only prejudice Clark can demonstrate is the delay between the filing of her original state court petition on July 16, 2018 and Nordstrom's moving to compel on April 11, 2019. But Nordstrom's delay in seeking to compel arbitration does not establish waiver. *Tristar Fin. Ins. Agency*, 97 Fed. Appx. at 465 ("Delay by itself 'falls far short' of establishing a waiver." (quoting *Texaco Expl.*, 243 F.3d at 912)); *see also id.* ("[Defendant's] eight-month delay in seeking arbitration does not compel a finding of waiver.").

Because Nordstrom did not substantially invoke the judicial process, and because Clark has failed to demonstrate prejudice, the court holds that Nordstrom did not waive its right to arbitrate.

\* \* \*

Accordingly, the court grants Nordstrom's motion to compel arbitration and stay proceedings. This case is stayed pending the completion of arbitration.[7] The clerk of court

---

[7]Because the arbitrator has been delegated the authority to decide the threshold question of arbitrability, completion of arbitration could occur at a preliminary stage if the

- 14 -

is directed to close this case statistically, without prejudice to reopening it statistically for further proceedings provided for under the FAA.

**SO ORDERED**.

July 30, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

arbitrator determines the dispute in question falls outside the scope of the Agreement.